# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Kevin W. Schmidt, | : | Case No. 3:06CV1531 |
| Plaintiffs, | : | |
| vs. | : | |
| Rossford Police Department, et al., | : | **MAGISTRATE'S REPORT** |
| | | **AND RECOMMENDATION** |
| Defendants. | : | |

This civil rights case, filed pursuant to 42 U.S.C. § 1983, was referred to the undersigned Magistrate Judge for the hearing and determination of all pretrial issues, and the filing of a Report and Recommendation.  Pending are Defendants' Motion for Summary Judgment (Docket No. 34), Plaintiff's Brief in Opposition (Docket No. 47 & 48) and Defendants' Reply (Docket No. 50).  For the reasons that follow, the Magistrate recommends that the Motion for Summary Judgment be granted and the referral to the Magistrate terminated.

## <u>JURISDICTION</u>

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U. S. C. § 1331.  Plaintiff requests that this Court accept pendent jurisdiction over his state claims.

Federal courts have the power to exercise pendent jurisdiction where the state and federal claims

derive from a common nucleus of facts such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction. *Thompson v. Carlton House Condo Unit Owner's Association,* 2007 WL 1467067, *1 (N. D. Ohio 2007)(*citing* 28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs*, 86 S.Ct. 1130, 1138 (1966)).  A district court has the power to exercise jurisdiction over pendent state law claims if the following prerequisites are met:  (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding.  *Aschinger v. Columbus Showcase Company*, 934 F. 2d 1402, 1412 (6th Cir. 1991).

In the instant case, the three prerequisites to exercising pendent jurisdiction are met.  First, Plaintiff presents a federal question for the purpose of vindicating a federal right under the Fourth Amendment.  Second, his state and federal claims are intertwined, all derived from the events occurring on June 22, 2004, when Defendant Vinson stopped him for speeding and arrested him for failing to have a valid license.  Third, claims such as these are typically tried in one proceeding for the convenience of the state and its employees.  Judicial economy dictates that this Court exercise its pendent jurisdiction to determine questions raised under state law.

## THE PARTIES

Plaintiff is an adult individual who resides in Pennsylvania (Docket No. 1, ¶ 1).

Defendant, Rossford, Ohio, is a city in Wood County, Ohio (Defendant City) (Docket No. 1, ¶ 3). Defendant Rossford Police Department (RPD) is a duly organized police force within the State of Ohio with its principal office located in Rossford, Ohio (Docket No. 1, ¶ 2).  Defendant Gary A.Vinson was

2

a Sergeant at the Rossford Police Department (Docket No. 40, p. 5).

## FACTUAL BACKGROUND

The basic facts are not in dispute. During June 2004 and earlier, Plaintiff worked at a club in downtown Toledo, Ohio and resided in Pennsylvania (Docket No. 38, p. 13, 14). Typically after work, Plaintiff left Toledo about 1:30 a.m. and drove four and one half hours to Pennsylvania (Docket No. 38, p. 15). On June 22, 2004, Plaintiff left the club, stopped in Rossford to meet with friends and was returning to Pennsylvania about 2:41 a.m. Plaintiff was driving his girlfriend's 1998 Pontiac with Pennsylvania license plates when he suddenly realized that he was in an unfamiliar area. Plaintiff made a u-turn and accelerated to a high rate of speed (Docket No. 38, pp. 21, 22, 23, 24; Docket No. 39, p. 53). Defendant Vinson engaged his radar unit and followed Plaintiff for several miles (Docket No. 39, pp. 55, 56). When Plaintiff reached a speed of 65 mph, Defendant Vinson initiated a traffic stop and notified dispatch that he was stopping Plaintiff (Docket No. 39, p. 57).

Plaintiff was unable to produce his driver's license; however, he gave Defendant Vinson his name, address, post office box and social security number. Defendant Vinson asked Plaintiff to vacate the car while he looked into the car (Docket No. 38, pp. 25-26). A second officer, Richard W. Cartwright, arrived (Docket No. 38, p. 26, Docket No. 36, p. 18). Plaintiff was standing with Officer Cartwright when Defendant Vinson advised him that his license was invalid (Docket No. 38, p. 26). Plaintiff was arrested, searched and handcuffed with his hands placed behind his back. He sat in the rear of a police car (Docket No. 38, pp. 27, 28, 31. 70). Plaintiff was transported to the Rossford Police Station for processing (Docket No. 38, p. 40; Docket No. 40, p. 106 ). He was unable to obtain a signal with his cell phone and was not permitted to make a telephone call for eighteen hours (Docket No. 38, pp. 36, 37). When he protested his inability to contact his girlfriend, Plaintiff claimed that Defendant Vinson lunged at him

(Docket No. 38, p. 39).

Eventually Officer Cartwright transported Plaintiff to the Wood County Criminal Justice Center in Bowling Green, Ohio (Docket No. 38, p. 41; Docket No. 40, pp. 106, 107).  At the county jail, Plaintiff was fingerprinted, photographed and searched.  He was provided county jail garb, forced to shower and placed in a single cell (Docket No. 38, pp. 43, 69).  Although Plaintiff appeared in court later in the morning on June 22nd , he was not released until June 23rd when his girlfriend arrived and posted bail (Docket No. 38, p. 44, 45, 46).  He returned to court on June 25th.  Pursuant to a plea agreement, the charge for no driver's license was dismissed, and Plaintiff pled no contest to the charge of speeding (Docket No. 38, pp. 47, 53).  Plaintiff was fined $25 (Docket No. 38, Defendant's Deposition Exhibit B).

Plaintiff claims that his reputation was harmed in Pennsylvania as a result of the incarceration.  However, the story of his incarceration was not published in the Pennsylvania paper and his girlfriend was not angry with him because of the incident (Docket No. 39, p. 63).  Plaintiff was deprived of his Lithium while incarcerated (Docket No. 39, p. 65).  He was a little shaky but he did not exhibit signs of hysteria or withdrawal (Docket No. 39, p. 67-68).  The dosage of Lithium was not increased as a result of his arrest (Docket No. 39, p. 67).

## PROCEDURAL BACKGROUND

On June 21, 2006, Plaintiff filed a complaint in district court pursuant to 42 U. S. C. § 1983 (Docket No. 1).  All Defendants filed a Motion for Summary Judgment (Docket No. 34).  Plaintiff opposes the Motion for Summary Judgment except as to Defendant Rossford Police Department (Docket No. 47).  Defendants filed a Reply Memorandum in Support of the Motion for Summary Judgment (Docket No. 50).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Cochran v. Caruso,* 2008 WL 397597, * 1 (W. D. Mich. 2008) (*citing* FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Incorporated,* 400 F.3d 466, 468 (6th Cir. 2005) *cert. denied,* 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005) *cert. denied*, 126 S. Ct. 338 (2005)). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. (*citing State Farm Fire & Casualty Company v. McGowan,* 421 F.3d 433, 436 (6th Cir. 2005) (*quoting Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986); *see also Tucker v. Union of Needletrades Industries & Textile Employees,* 407 F.3d 784, 787 (6th Cir. 2005)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Id*. (*citing Matsushita Electrical Industrial Company, LTD. v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1356 (1986); *Twin City Fire Insurance Company v. Adkins,* 400 F.3d 293, 296 (6th Cir. 2005)).

In responding to a summary judgment motion, the nonmoving party must do more than raise some doubt as to the existence of a fact. *F.D.I.C. v. Miller,* 2007 WL 2359819, *3 (N.D.Ohio 2007) (*citing Lucas v. Leaseway Multi Transportation Services, Incorporated,* 738 F. Supp. 214, 217 (E. D. Mich. 1990), *aff'd,* 929 F.2d 701 (6th Cir. 1991)).  The nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Id.*

## DISCUSSION

Plaintiff's claims against Defendant City and Vinson can be consolidated as follows. Defendant and Gary Vinson maliciously prosecuted him, abused the process, intentionally inflicted mental distress and falsely imprisoned him. Plaintiff alleges further that Defendant City ratified the acts of Defendant Vinson by failing to train him regarding the appropriate search and seizure techniques and encouraged his acts by failing to discipline him. Such failures create *de facto* policies, customs and practices that resulted in violations of Plaintiff's Fourth Amendment rights.

Defendants City and Vinson seek judgment as a matter of law on the following issues. First, Plaintiff's claims for malicious prosecution and intentional infliction of emotional distress are barred by the statute of limitations. Second, Defendant City did not employ a policy or custom to inflict injury. Third, Defendant City is immune from those state claims not barred by the statute of limitations. Fourth, Defendant RPD must be dismissed as it cannot be sued sui juris. Fifth, Defendants are not liable for any acts taken against Plaintiff while he was incarcerated. Sixth, Defendant Vinson did not violate Plaintiff's Fourth Amendment rights. Seventh, Defendant Vinson is immune from suit on Plaintiff's federal claims and state claims that are not time barred.

1.    *Claims Against Defendant RFD*

Plaintiff concedes that Defendant RPD as an entity is not *sui juris*. Plaintiff does not oppose the dismissal of Defendant RPD as a party (Docket No. 47, p. 4, fn. 1). The Magistrate recommends that Defendant RPD be dismissed as a party to this litigation.

2.    *Municipality's Failure to Train, Supervise or Discipline*

The only cognizable legal claim against Defendant City is based on the municipality's failure to train, supervise or discipline its police officers, specifically Defendant Vinson. In response, Defendant City argues that Plaintiff cannot make a prima facie case for the failure to train, supervise or discipline.

6

The record simply does not support Plaintiff's allegation of any unconstitutional policies.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the United States Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *Allen v. Wilkinson,* 2007 WL 987307, *3 (N.D.Ohio 2007) (*citing West v. Atkins,* 108 S. Ct. 2250, 2254 (1988); *Street v. Correctional Corporation of America,* 102 F.3d 810, 814 (6th Cir. 1996)).  Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Id.* (*citing Albright v. Oliver,* 114 S. Ct. 807, 811 (1994)).

To assert a Section 1983 claim against a city, a plaintiff must prove that he or she was deprived of a constitutional right; that the municipality had a policy; and that the policy was the moving force behind the constitutional violation. *Quinn's Automotive Incorporated v. City of Parma,* 2007 WL 3232287, *5 (N. D. Ohio 2007) (*citing O'Brien v. City of Grand Rapids,* 23 F.3d 990, 1000 (6th Cir. 1994) (*citing Monell v. Department of Social Services,* 98 S. Ct. 2018 (1978)).  Plaintiff cannot rely on a theory of *respondeat superior* to hold a municipality liable under Section 1983. *Id.* (*citing Monell,* 98 S.Ct. at 2036-2047).

The inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Id. Monell's* rule that a city is not liable under Section 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. *Id.* The issue is therefore whether that training program is adequate. *Id.* If it is not, the question becomes whether the inadequate training justifiably represents city policy. *Id.* Ultimately the focus must be on adequacy

7

of the training program as it relates to the tasks a particular officer must perform.  *Id.*  That a particular officer may be inadequately trained will not by itself be sufficient to attach liability to the city since the officer's shortcomings may have resulted from factors other than a faulty training program.  *Id.*  Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.  *Id.* (*citing City of Canton v. Harris*, 109 S. Ct. 1197, 1205-1206 (1989)).

Even if all justiciable inferences are drawn in Plaintiff's favor, Plaintiff's only evidence of a policy or custom endorsed by Defendant City is his claim that Defendant Vinson failed to properly comprehend the use of the Law Enforcement Automated Data System (LEADS) or realize that the search the dispatcher conducted at the time of the stop concerned Ohio records only.  However, this evidence failed to establish a causal link between Defendant Vinson's failure to access the system, an inadequate training program and the deprivation of Plaintiff's rights.  Moreover, there is no evidence that the inadequate training program justifiably represented city policy.  In sum, Plaintiff failed to demonstrate that Defendant City was the moving force behind Defendant Vinson's alleged deficiencies in training.  These allegations are insufficient to establish that Defendant City had a policy or custom for officers to act in that manner and to require submission to the jury of the dispute over the facts.  Therefore, Plaintiff's Section 1983 claims for failure to train, supervise or discipline Defendant City fail.

3.    *Municipal Liability for State Claims*

Defendant City argues that is it immune from liability with respect to Plaintiff's malicious prosecution, malicious abuse of process, intentional infliction of emotional distress and false imprisonment claims.  Plaintiff claims in his response to the Motion for Summary Judgment that the "city defendant is immune from the state law claim."  Since there is some ambiguity as to the meaning and

8

applicability of this acknowledgment, the Magistrate provides the following discussion for clarity.

Generally, a political subdivision is immune from liability for death, injury or loss to persons or property allegedly caused by an act or omission of the political subdivision or political subdivision's employee in connection with a governmental or proprietary function. OHIO REV. CODE § 2744.02(A)(1) (Thomson/West 2008). Once immunity is established, a determination must be made as to whether any of the five exceptions to immunity under OHIO REV. CODE § 2744.02(B) apply. The five exceptions are:

(1)    negligent operation of a motor vehicle by political subdivision employees while in the scope of their employment;
(2)    negligent performance of acts by employees with respect to proprietary functions of political subdivisions;
(3)    failure to keep public roadways in repair and free from nuisance;
(4)    negligence of employees within or on the grounds of government buildings; and
(5)    liability expressly imposed on the subdivision by a section of the Ohio Revised Code. If one of these exceptions applies, the political subdivision loses its immunity shield.

Immunity can be reinstated if the political subdivision can successfully argue that one of the defenses of set forth in OHIO REV. CODE § 2744.03 applies. The defenses under Section 2744.03 include

(1)    performance of a judicial or legislative function;
(2)    conduct required by law;
(3)    conduct required by office;
(4)    performance of community service by the injured party; and
(5)    misuse of equipment, supplies, materials, or other like resources.

The Magistrate finds and Plaintiff appears to acknowledges that Defendant City, a political subdivision, is immune from all of the intentional torts of its employees under Section 2744.02(A) (*See* Docket No. 47, p. 10). Plaintiff has failed to argue or demonstrate that one of the exceptions to Section 2744.02 (B) applies. Since there is no genuine issue of material fact as to the applicability of an exception under Section 2744.02(B), Defendant City is entitled to judgment as a matter of law. Plaintiff's state claims against Defendant City must therefore be dismissed.

*4.    Claims Against Defendant Vinson*

9

A.    *Malicious Prosecution*

Plaintiff alleges, pursuant to Section 1983, that there was no probable cause for the arrest since the dispatcher, Linda L. Honaker, could have discovered the status of his license at the time of the stop. In the alternative, Plaintiff argues that the claim is not time barred by the statute of limitations since it did not commence running until Linda Honaker divulged that she could have discovered the status of Plaintiff's license at the stop. Plaintiff contends, therefore, that the claim for malicious prosecution was filed within one year after the statute of limitations began to run.

Defendant Vinson argues simply that there was probable cause for the arrest. In the alternative, the state law claim for malicious prosecution is time barred.

Malicious prosecution claims can embody violations of federal and state laws. *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 675 (6th Cir. 2005) (*citing Thacker v. City of Columbus,* 328 F.3d 244, 258-259 (6th Cir. 2003)). In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution. *Id.* (*citing Thacker*, 328 F. 3d at 259).

The essential elements of a malicious prosecution case arising under Ohio law include a showing of (1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the defendant. *Harris v. Bornhorst,* 513 F.3d 503, 520 (6th Cir. 2008) (*citing Swiecicki v. Delgado,* 463 F.3d 489, 503 (6th Cir. 2006); *Trussell v. General Motors Corporation,* 53 Ohio St.3d 142, 559 N.E.2d 732, 735 (Ohio 1990)).

Plaintiff does not dispute that when the stop was executed he had been exceeding the speed limit (Docket No. 38, p. 24). Under Ohio's law, no person shall operate a motor vehicle at a speed greater or less than is reasonable or proper. OHIO REV. CODE § 4511.21(A) (Thomson/West 2008). Defendant

10

Vinson had probable cause to stop Plaintiff as he was violating Ohio law by driving faster than the posted speed limit.

Having concluded that Defendant Vinson had probable cause initially to stop Plaintiff for a traffic violation, the Magistrate must then determine whether probable cause existed for the subsequent arrest. Ohio law prohibits driving on a public roadway without a properly issued license. OHIO REV. CODE § 4501.02(A) (Thomson/West 2008). When making a traffic stop, an officer can request a driver's license, registration, run a computer check and issue a citation. *United States v. Hill*, 195 F. 3d 258, 269 (6th Cir. 1999, *cert. denied,* 120 S. Ct. 1207 (2000)). The Supreme Court has determined that when an officer has probable cause to believe that an individual committed even a very minor offense, he or she is authorized, without violating the Fourth Amendment, to make a warrantless arrest for misdemeanors. *Atwater v. City of Lago Vista*, 121 S. Ct. 1536, 1557 (2001).

In order to comply with the requirements of the Fourth Amendment in the absence of a warrant for an arrest, the officers must have probable cause to believe that an individual has violated, or was violating, the law. *Blair v. City of Cleveland,* 148 F. Supp.2d 894, 905 (N. D. Ohio 2000) (*citing United States v. Strickland,* 144 F.3d 412, 415 (6th Cir. 1998) (*citing Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988)). Probable cause consists of "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (*citing Criss,* 867 F.2d at 262; *Michigan v. DeFillippo,* 99 S.Ct. 2627, 2632 (1979)). Even where officers mistakenly believe there is probable cause to arrest, their determination is not actionable as long as it was reasonable. *Id.*

Assuming that the claim was timely filed, the Magistrate finds that Plaintiff committed an offense,

11

albeit minor, by driving without a properly issued license.  Insofar as there was probable cause to stop him for speeding and arrest him for driving without a properly issued license, Plaintiff's state and federal law claims for malicious prosecution fail.  The fact that Plaintiff's Ohio infractions which led to his arrest had actually been resolved, in part, by the time he appeared in court does not change the result.  Even if the Court were to assume that Defendant Vinson did not have probable cause for the arrest and the arrest was unlawful under the Fourth Amendment, the Court would conclude that Defendant Vinson made a reasonable mistake of fact in presuming that Plaintiff's license was invalid and therefore protected by qualified immunity.  Based upon the undisputed facts, a prudent officer in Defendant Vinson's position, knowing what he knew at the time of the arrest, could have concluded that there was sufficient evidence to believe that Plaintiff had been driving without a valid license.  Defendant Vinson was reasonable in his determination that probable cause to make an arrest existed at the time he made the arrest.

Plaintiff cannot establish a lack of probable cause, a required element of his claim for malicious prosecution.  Accordingly, Defendant Vinson is entitled to judgment as a matter of law on Plaintiff's state and federal claims of malicious prosecution.

B.    *Abuse of Process*

Plaintiff argues that Defendant Vinson subverted the legal process by arresting and detaining him so that he could impound his girlfriend's vehicle to search for illicit drugs.  Defendant Vinson argues that as an employee of a political subdivision, he is immune from civil liability for his conduct.

The Sixth Circuit Court has not specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to Section 1983.  *Voyticky*, *supra*, 412 F.3d a 676 (citations omitted).  If such a claim is cognizable as a federal constitutional claim, however, the elements necessary to prove it would likely mirror those of state law.  *Id.* at 676-677 (*See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2nd Cir. 1994)).  Under Ohio state law, the three elements of the tort of abuse

12

of process are:  (1) that a legal proceeding has been set in motion in proper form and with probable cause;

(2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was

not designed; and (3) that direct damage has resulted from the wrongful use of process.

As to the issue of Defendant Vinson's individual liability for the claim of malicious abuse of

process, in Ohio a public employee is immune from liability in performing a governmental function,

unless the officer's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless

manner.  OHIO REV. CODE § 2744.03(A)(6)(b) (Thomson/West 2008).  Malicious purpose encompasses

exercising "malice," which can be defined as the willful and intentional design to do injury, or the

intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.

*Jacobs v. Village of Ottawa Hills,* 159 F. Supp.2d 693, 698 (N. D. Ohio 2001) (*citing Caruso v. State,* 136

Ohio App.3d 616, 620-21, 737 N.E.2d 563 (2000) (citations omitted)).

Bad faith has been defined as the opposite of good faith, generally implying or involving actual

or constructive fraud or a design to mislead or deceive another.  *Id.*  Bad faith is not prompted by an

honest mistake as to one's rights or duties, but by some interested or sinister motive.  *Id.*

Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead

a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such

risk is greater than that necessary to make the conduct negligent.  *Id.* at 698-699.  The term "reckless" is

often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of

a known risk.  *Id.*  As to all of the above terms, their definitions connote a mental state of greater

culpability than simple carelessness or negligence.  *Id.*

The parties agree that in effectuating Plaintiff's arrest, Defendant Vinson was engaged in

government function as defined under OHIO REV. CODE § 2744.01(C)(2)(a).  However, Plaintiff has failed

to demonstrate that he possesses sufficient evidence to create a jury question on whether Defendant

Vinson acted with malicious purpose, in bad faith or in a wanton or reckless manner.  Plaintiff alleges but fails to support an allegation that Defendant Vinson stopped him as an excuse to impound his car and conduct an inventory search for contraband.  Defendant Vinson testified that he had never met Plaintiff before the night of the arrest (Docket No. 40, p. 93).  He further testified that he had no reason to suspect that Plaintiff had contraband in his vehicle at the time of stop.  The vehicle was impounded to safeguard it from impending collisions from other vehicles and vandalism (Docket No. 40, p. 94).  Although certified to use the LEADS system, Defendant Vinson admitted that he was not proficient in its use.  Consequently he relied upon the dispatcher to ascertain records from the terminal in the station (Docket No. 40, p. 99).  The Magistrate cannot conclude from these facts that he acted to satisfy personal resentment or that his acts were fraudulent or pursuant to a design.  While Defendant Vinson may have been negligent in failing to pursue actual origin and status of Plaintiff's license, such conduct does not rise to the level of perversity contemplated to convert negligence into recklessness.  As such, there is a lack of evidence in the record that Defendant Vinson's acts in the arrest and detention were omissions made in bad faith, in a wanton or reckless manner or with a malicious purpose.

C.      *Intentional Infliction of Emotional Distress*

Defendant Vinson argues that he is entitled to immunity from civil liability for Plaintiff's claim of intentional infliction of emotional distress.  Plaintiff makes a blanket assertion that Defendant Vinson is not entitled to immunity on any of his state claims.

The Magistrate agrees that Defendant Vinson is immune from Plaintiff's state law claim of intentional infliction of emotional distress.  Plaintiff does not argue or prove that one of the exceptions to the grant of immunity under Section 2744.02 (B) applies.  Since Plaintiff has failed to present evidence creating a genuine issue of material fact as to the applicability of an exception under Section 2744.02(B), Defendant Vinson is entitled to judgment as a matter of law on the issue of immunity from the civil claim

14

of intentional infliction of emotional distress.

> D.    *False Arrest*

Plaintiff argues that he was deprived of his liberty without lawful justification.  Defendant Vinson asserts the defense of qualified immunity.

The Magistrate has already determined that there is a presumption of qualified immunity accorded official government acts executed by political subdivisions and their employees.  Political subdivisions only lose this presumption if the alleged conduct causing injury, death, loss to person or property falls into one of the exceptions listed at OHIO REV. CODE § 2744.02(B)(1) - (5).

Here Plaintiff failed to allege the applicability of an exception to the presumption.  Thus, Defendant Vinson is immune from civil suit and the claim for false arrest made against him should be dismissed.

## CONCLUSION

Construing the evidence most strongly in favor of Plaintiff, as required by FED. R. CIV. P. 56, the Magistrate finds that (1) Defendant RPD should be dismissed as a party and (2) Plaintiff has not discharged his burden of demonstrating a rebuttable material fact which precludes the entry of judgment as a matter of law for Defendants City and Vinson.  Accordingly, the Magistrate recommends that Defendants' Motion for Summary Judgment be granted and the referral to the Magistrate be terminated.

> /s/ Vernelis K. Armstrong
> United States Magistrate Judge

Date:   June 23, 2008

## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto

has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.

16